JAMES CLARK, JR., ELECTRIC CO. v. UNITED STATES ELECTRICAL TOOL CO. et al.

(Circuit Court of Appeals, Seventh Circuit.   August 10, 1917.)

No. 2266.

PATENTS ⊙⊃328—INFRINGEMENT—ELECTRIC DRILL.

The Willey patent, No. 750,744, for an electric motor driven portable drill, *held* not infringed, on evidence showing that the alleged infringing device was in public use more than two years before application for the patent was filed.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the James Clark, Jr., Electric Company against the United States Electrical Tool Company and the Schneider Sales Company.   Decree for defendants, and complainant appeals.   Affirmed.

For opinion below, see 217 Fed. 252.

George L. Wilkinson and Thomas F. Sheridan, both of Chicago, Ill., for appellant.

Samuel E. Hibben, of Chicago, Ill., for appellees.

Before BAKER, MACK, and ALSCHULER, Circuit Judges.

BAKER, Circuit Judge.   Appellant's bill for alleged infringement of patent No. 750,744, January 26, 1904, to Willey, for an electric motor driven portable drill, was dismissed for want of equity.

Defenses were lack of invention, noninfringement, and prior knowledge and prior use by appellee's president, Smith.

It is unnecessary to consider separately the questions of patentable novelty and infringement, because we find that the drill, manufactured and sold by appellee and alleged to be an infringement, was independently devised and perfected and publicly used by Smith, appellee's president, more than two years before Willey filed his application, March 5, 1903.

Smith, according to the records of the Wadsworth Watch Case Company of Dayton, Ky., was in charge of that company's steam plant and electrical apparatus from July 19, 1900, to October 27, 1904.   Prior to that he had had 20 years' experience with electric apparatus, particularly motors.

A distinguishing feature of the drill of the Willey patent is that the chuck for the tool is not at the end of the armature shaft, but is carried on an offset shaft which is rotated by the armature shaft through reduction gears.   Before entering the Wadsworth Company's service, Smith had begun the construction of an electric drill with the chuck at the end of the armature shaft.   He testified that he did not finish the drill of that type; that, shortly after he went to the Wadsworth Company, he began to organize the motor, casing and other materials he already had, together with additional materials purchased for cash or picked from scrap, into an electric drill of the type now made by

⊙⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

appellee, with the tool shaft offset from the armature shaft; that he completed this drill in the latter part of 1900; that he and others during 1900 and 1901 publicly used it as a completed and efficient drill; and that he began endeavors to procure financial assistance to make and market the tool. Appellee introduced an exhibit which Smith identified as the original drill completed by him in 1900. Its material and workmanship evidence a patchwork origin.

By 1904 appellee was in the market, competing for trade. Appellant filed its bill in 1913. Appellee's depositions were taken in 1914. This lapse of ten years has deprived appellee of some witnesses named by Smith, and possibly of others forgotten, and has forced the attending witnesses, who undertook to corroborate Smith and identify the exhibit, to search the dregs of memory unfortified by records that might have been available, if suit had promptly been brought. This testimony, while coming from apparently disinterested and credible witnesses and quite persuasive in its character, does not alone come up to the required standard. But there remain one witness and one record whose reliability is certain.

Thomas McGovern was an experienced and competent electrical machinist. He identified the exhibit as either the drill itself or one identical in construction, principle, and operation with the drill he saw in Smith's possession and use while they were both in the Wadsworth Company's service. On the record he stands as a disinterested and reliable witness. No attempt was made to impeach his character. Nothing in the record contradicts his testimony; and the somewhat hazy testimony of other witnesses, above referred to, tends to corroborate it. Doubt is sought to be injected by appellant's suggestion that McGovern confused the exhibit with Smith's first work on a drill having the chuck at the end of the armature shaft (which Smith testifies he had abandoned before entering the Wadsworth Company); but the two types are so distinctive in construction and operation that it is incredible that an expert electrician and machinist should confuse the one with the other.

McGovern's recollection concerning dates was fortified by the unquestioned records of the Wadsworth Company, showing that he began service in July, 1900, and quit January 17, 1901. From then till after this suit was instituted he had no opportunity or occasion to see or know of Smith and his drill.

As triers of the fact we are convinced beyond any reasonable doubt that Smith built and used the alleged infringing structure in the latter part of 1900, more than two years before Willey applied for his patent.

The decree is affirmed.